IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO.  1:04CV145

| | | |
|---|---|---|
| In the Matter of Arbitration between | ) | |
| | ) | |
| THE FELDSPAR CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| UNITED MINE WORKERS OF | ) | |
| AMERICA, LOCAL 140, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

THIS MATTER is before the Court on the Respondent's objections to the Memorandum and Recommendation entered by the Magistrate Judge granting Petitioner's motion for summary judgment.

## I.  FACTUAL AND PROCEDURAL HISTORY

Feldspar Corporation brought this action for a review of the Opinion and Award of an arbitrator who reversed its decision to terminate the employment of Gerald Garland (the "employee"), who is a member of the United Mine Workers of America, Local 140.  The employee was terminated by the Petitioner for gross misconduct in which he was alleged to have tackled another employee, brought him to the ground, and grabbed and twisted his testicles.  The employee is also alleged to have communicated threats to another employee, either by saying "I'll cut your [expletive deleted] guts out" or "I'll choke the [expletive deleted] out of you."  The

employee was also alleged to have actually choked the other employee while communicating these threats. The employment dispute at issue in this case is governed by a Collective Bargaining Agreement ("CBA") entered into between the Respondent and Petitioner.

Following the issuance of a notice of a suspension with intent to terminate to the employee, the parties elected under the CBA to arbitrate the matter. Following an arbitration hearing, the arbitrator issued an Opinion and Award, finding that while much of the alleged misconduct took place, it was not gross misconduct and, based on specific mitigating factors, did not warrant the termination of the employee. The arbitrator reduced the disciplinary action to a three day suspension and reinstated the employee.

Following the arbitrator's Opinion and Award, the Petitioner sought review of the opinion with this Court. Both parties moved for summary judgment, and the issue was referred to the Magistrate Judge, who recommended summary judgment for the Petitioner, the decision of the arbitrator be vacated, and the employer's decision discharging the employee be reinstated and affirmed. The Respondent filed timely objections to the Memorandum and Recommendation, and the matter is now ripe for resolution.

## II. STANDARD OF REVIEW

The Court reviews *de novo* those portions of a Magistrate Judge's memorandum and recommendation to which specific objections are made. ***Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F.Supp.2d 472, 475 (W.D.N.C. 2003).** Where the parties have not timely filed such an objection, "a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the

recommendation.'"  ***Diamond v. Colonial Life & Acc. Ins. Co.***, **416 F.3d 310, 315 (4th Cir. 2005) (citing 28 U.S.C. § 636(b)(1)).**

      The standard for evaluating a motion for summary judgment is well established. Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c).**  A genuine issue of material fact exists where there is evidence, viewed in the light most favorable to the non-moving party, such that a reasonable jury could find in favor of the non-moving party. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, **475 U.S. 574, 585-87 (1986)**.  Once the moving party has met its burden of showing that no issue of material fact exists, the burden shifts to the party opposing the motion, to prove to the Court such an issue of fact does, in fact, exist. ***Bouchat v. Baltimore Ravens Football Club***, **Inc., 346 F.3d 514, 522 (4th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).**  The opposing party "may not rest upon the mere allegations or denials of [its] pleadings," but instead must "set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P. 56(e).**  Unsupported allegations and speculation are not sufficient to defeat a summary judgment motion. ***Felty v. Graves-Humphreys Co.***, **818 F.2d 1126, 1128 (4th Cir. 1987); *see also Celotex Corp.*, 477 U.S. at 323-24 ("One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").**  When considering cross-motions for summary judgment, the Court will evaluate each motion separately using the standard set forth above. ***Local 2-1971 of Pace Int'l Union v. Cooper***, **364 F.Supp.2d 546, 554 (W.D.N.C. 2005).**

An arbitrator's decision is generally entitled to great deference from the federal courts. ***Mountaineer Gas Co. v. Oil, Chemical, & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).** In fact, "judicial review of an arbitration award has been characterized as 'among the narrowest known to the law.'" ***Westvaco Corp. v. United Paperworkers Int'l Union*, AFL-CIO, 171 F.3d 971, 974 (4th Cir. 1999) (quoting *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978)).** "After all, the parties to a collective bargaining agreement bargained for the arbitrator's interpretation and resolution of their dispute," and not that of the federal judiciary. ***Mountaineer Gas Co., supra*.** The Court should review whether the arbitrator performed his job, "not whether he did it well, correctly, or reasonably, but simply whether he did it." ***Id.*** Notwithstanding this narrow scope of review, a court should overturn an arbitration award where it fails to draw its essence from the parties' agreement or where it contradicts the agreement's plain language. ***Clinchfield Coal Co. v. District 28, United Mine Workers of America*, 166 F.3d 331 (table), 1998 WL 808188, * 1 (4th Cir. 1998).**

## III.  DISCUSSION

### A. Relevant Terms of the CBA and Company Work Rules

The CBA applicable at the time of the events leading to this dispute states, in relevant parts:

### Article 4 - Management's Rights & Responsibilities
***

2.    The sole and exclusive rights of Management include, but are not limited to, the following: the right to .. .  discipline Employees including the right to discharge and to maintain an orderly work environment, including the right to make and enforce reasonable rules for maintenance of discipline, safety and efficiency[.]

***
## Article 52 - Standards of Conduct
***

The purpose of the following procedure is to provide a fair system of administering progressive corrective discipline through-out the Bargaining Unit. It should be noted that although this system is intended to be progressive and corrective, certain infractions which may in the opinion of Management indicate gross misconduct . . . may result in accelerated levels of disciplinary action being taken up to and including immediate suspension with intent to discharge.

The progressive disciplinary process will in most cases involve a four (4) step procedure as follows:

| | |
|---|---|
| 1st Step: | The initial step is a verbal warning, with documentation to the Employee's file. |
| 2nd Step: | Written Warning with copy to the Employee's file and copy given to the Employee. |
| 3rd Step: | Three (3) day suspension without pay. |
| 4th Step: | Suspension pending discharge. |

***
## Article 57 - Discharge Procedure

No Employee covered by this Agreement may be discharged except for just cause. The burden of proof shall be on the Employer to establish grounds for discharge in all proceedings under this agreement.

***
## Article 58 - Grievance Procedure

If an Employee feels he has a problem or misunderstanding that is in violation of the Agreement, he may file a grievance.

***

In considering the resolve, the Arbitrator shall have no authority to add to, delete, detract from, alter, eliminate or in anyway modify any part of the Labor Agreement, Company policies, Company work rules or supplements thereto unless mutually agreed to by both parties. After hearing the case, the Arbitrator shall render a written decision, which will be final and binding on both parties subject to and pending any court proceedings or rulings thereof.

**Joint Exhibit 1, Feldspar Corporation Labor Agreement, 02/01/03 to 01/31/06 ["CBA"]**

***attached to* Petitioner's Brief in Support of Application for Order Vacating Arbitration**

**Award ["Petitioner's Brief"], filed July 29, 2004, at 3, 53-54, 65-66, 69.**

Pursuant to its rights under Article 2 of the CBA, the Petitioner has published Company Work Rules to promote the safety, common good, and welfare of the Company. Such rules are

enforceable as the terms of the CBA. ***See Mountaineer Gas Co., supra*, at 610 ("[W]hen the collective bargaining agreement reserves to management the right to make and enforce disciplinary rules, any rules or policies promulgated in accordance with that authority are thus incorporated into the . . . agreement and have the force of contract language.").** The Petitioner's Company Work Rules state, in relevant part:

> The commission of any of the acts listed below will result in disciplinary action ranging from verbal or written warnings to suspension or to immediate suspension with intent to discharge depending on the act and the circumstances.
> ***
> 13)    Fighting or committing an assault.
> 14)    Using abusive, threatening or intimidating language.

**Joint Exhibit 2, Company Work Rules, *attached to* Petitioner's Brief, at 1.**

### B. The Arbitrator's Opinion and Award

Based upon the evidence and testimony submitted at the arbitration hearing, the arbitrator made the following findings regarding the alleged conduct of the employee. The arbitrator determined that the employee had participated in wrestling and restraining another employee on the ground in the company break room on August 24, 2003. **Exhibit B, Opinion and Award of Arbitrator, *attached to* Petitioner's Brief, at 17.** While the arbitrator was unable to conclusively determine whether the employee actually grabbed the testicles of the victim as alleged, the arbitrator did note that the employee admitted that he had pinched or grabbed the inner thigh of the individual, making him believe such an act was going to take place. ***Id.***

The arbitrator also found that the employee had put his arm around another employee on August 24, 2003, and threatened to that individual that he would "choke the [expletive] out of

him." *Id.*, at 16. The arbitrator was unable to conclusively determine whether other alleged and threatening statements were also made. *Id.* The arbitrator concluded, however, that the individual subject to the threats was not threatened by the acts of the employee, because he had not reported the acts to his supervisors or law enforcement. *Id.*

Based upon these factual findings, the arbitrator concluded that the events that took place in the break room on August 24, 2003, did not constitute an assault and, therefore, were not in violation of Rule 14 of the Company Work Rules. *Id.*, at 18-19. The arbitrator explained that an assault required that the victim "fear[] for their life," and that the wrestling, pinching, and grabbing of the individual were not of the serious conduct which assault normally involves. *Id.* As to the other events on August 24, the arbitrator concluded that the employee had violated Rule 13 of the Company Work Rules by "using abusive, threatening, or intimidating language," as the rule prohibits. *Id.*, at 19.

Following these conclusions, the arbitrator found that the one violation of Rule 13 did not provide "just cause" for the immediate discharge of the employee. *Id.* In reaching this conclusion, the arbitrator considered various mitigating factors, including the employee's term of employment with the Petitioner and his clean disciplinary record up to the incident in question. *Id.* The arbitrator also cited the Petitioner's policy advocating progressive or corrective discipline included in the CBA, whereby an employee was generally subject to corrective punishment instead of immediate discharge upon an initial disciplinary action. *Id.*, at 19-20. While the arbitrator noted that the CBA permitted the employer to accelerate discipline in cases of gross misconduct, the arbitrator explicitly found that the conduct found to have taken place did not constitute gross misconduct. *Id.*

**C. Review of the Arbitrator's Opinion and Award**

The Court has reviewed the arbitrator's Opinion and Award, as well as the parties' arguments in support of their cross-motions for summary judgment. Based on this review and for the following reasons, the Court overturns the Opinion and Award of the arbitrator and remands the matter for further proceedings.

The Court finds that the arbitrator first erred in making the determination that the employee's conduct on August 24, 2003, did not constitute an assault under the CBA and Company Work Rules. In determining that the employee's conduct did not violate Rule 14 of the Company Work Rules, the arbitrator assigned a very restrictive definition to the term "assault." In concluding that an assault did not take place when the employee participated in tackling, restraining, and attempting to grab the leg or testicles of another employee, the arbitrator found that "[u]sually, one who is assaulted fears for their life." *Id.*, **at 18.** Because the arbitrator concluded that the individual subjected to the employee's actions did not fear for his life, the conduct complained of here did not rise to the level of an assault.

An arbitrator is free to give his interpretation to ambiguous language in an agreement; however, he may not ignore the plain language of the agreement. ***Clinchfield Coal Co., supra, at \*1 ("[A]ny arbitration decision . . . may not contradict the agreement's plain language."); Zady Natey, Inc. v. United Food & Commercial Workers Int'l Union, Local No. 27,*** 826 F. Supp. 142, 144 (D. Md. 1992) ("While an arbitrator is free to interpret ambiguous provisions in a collective bargaining agreement, he may not ignore its plain language.").** When an arbitrator assigns other than the plain meaning to a term in an agreement, his actions serve to alter or amend that agreement. ***Id.* (citing *Inter-City Gas Corp. v. Boise***

***Cascade Corp.*, 845 F.2d 184, 187 (8th Cir. 1988)).** The Court determines that the arbitrator's decision ignores the plain meaning of the term "assault." Black's Law Dictionary defines an assault as "the threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact." ***Black's Law Dictionary* (7th ed. 1999).** The Court believes that the definition of assault is not ambiguous and that this definition encompasses the plain meaning of the term. The term does not necessarily compel a fear for one's life, as the arbitrator found, but merely harmful or offensive conduct. While the arbitrator is correct in concluding that an assault would not include common, everyday touching, the Court believes that the acts complained of here extend far beyond this standard. Having failed to apply the plain meaning of the term "assault," the arbitrator has acted contrary to his authority in a manner that modified the collective bargaining agreement between the parties. ***See* CBA, *supra* at 69 ("In considering the resolve, the Arbitrator shall have no authority to add to, delete, detract from, alter, eliminate or in anyway modify any part of the Labor Agreement, Company policies, Company work rules or supplements thereto unless mutually agreed to by both parties.").**

The Court also finds that the arbitrator, in determining that the employee's conduct did not constitute gross misconduct, again acted outside of the authority granted to him by the CBA and ignored the plain meaning of the agreement's provisions. The plain language of the CBA reserves the determination of what constitutes gross misconduct for the employer. ***Id.*, at 54 ("certain infractions which may *in the opinion of Management indicate gross misconduct . . .* may result in accelerated levels of disciplinary action being taken") (emphasis added).** The arbitrator's interpretation of the CBA to permit him to make a determination of what constitutes

gross misconduct is contrary to the plain meaning of this provision in the agreement. The determination was outside of the arbitrator's authority and will not be deferred to by this Court. *See, Clinchfield Coal Co., supra.*

The Petitioner also claims that the CBA grants absolute discretion to the employer to terminate an employee upon a finding of gross misconduct. *See id.* **(holding that where the agreement gives the employer full discretion to terminate an employee for specific conduct, decision to terminate cannot be reversed by arbitrator where specific conduct occurred).** Therefore, because the arbitrator found the employee committed much of the conduct determined to be gross misconduct by the Petitioner, the Court should sustain the Petitioner's decision to terminate him. However, the Court finds it would be improper to address this contention at this time. The arbitrator in this case made the erroneous determination that the employee's conduct did not constitute gross misconduct. Therefore, he did not address whether the agreement should be interpreted to grant full discretion to the employer to terminate the employee upon a finding of gross misconduct. The language of the provisions in the CBA from which the Petitioner argues this discretion arises, might be interpreted by an arbitrator in ways other than the Petitioner suggests. *See, e.g., Westvaco Corp., supra.* As discussed, the parties have bargained for an arbitrator, not this Court, to interpret the parties's rights under the agreement. *Mountaineer Gas Co., supra*, **at 608.** The Court, therefore, will defer to an arbitrator in new proceeding to interpret the scope of the employer's discretion upon a finding of gross misconduct. The Court

regrets that its decision today further extends the dispute between the parties to include another arbitration, but believes that this result is compelled by these facts.[1]

For the reasons stated herein, the Court vacates the Opinion and Award of the arbitrator, and remands the matter for new arbitration proceedings. While the Court does not question the arbitrator's good faith, it believes that the appearance of impartiality requires that a new arbitrator be selected for the new proceeding. *See Kennametal, Inc. v. United Steelworkers of America*, 262 F.Supp.2d 663, 671 (W.D. Va. 2003) (citing *Grand Rapids Die Casting Corp. v. Local Union No. 159, UAW*, 684 F.2d 413, 416-17 (6th Cir. 1982).


## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and the Respondent's Motion for Summary Judgment is **DENIED**. An Order of Remand is filed herewith.

**IT IS FURTHER ORDERED** that Petitioner's motion to amend the record is **DENIED** as moot.

---

[1]Because the Court will not address the Petitioner's argument with regard to this issue, it need not consider the Respondent's argument that the Petitioner had waived its right to bring the issue before the Court by failing to present it to the arbitrator.

**Signed: September 2, 2005**

Lacy H. Thornburg
United States District Judge